05 CV 8084

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------------X

WILLIAM J. CARMODY,

                                          Plaintiff,

         -against-

THE CITY OF NEW YORK; POLICE DEPARTMENT
CITY OF NEW YORK; THE CIVILIAN COMPLAINT
REVIEW BOARD; RAYMOND W. KELLY, Police
Commissioner; NELDRA M. ZEIGLER, Deputy Commissioner,
Office of Equal Employment Opportunity; JOSEPH ESPOSITO;
Chief, Chief of Department; MURPHY, Lieutenant, Chief of
Department; DARRYL WEIR, Sergeant, Chief of Department;
RAFAEL PINEIRO, Chief, Personnel Bureau; KEVIN
KENNEY, Sergeant, Employee Management Division; CHARLES
V. CAMPISI; Chief, Internal Affairs Bureau; PIGNATARO,
Captain, Internal Affairs Bureau Group 22; MATHEW GRACEN,
Lieutenant, Internal Affairs Bureau Group 22; MARLENE BEAMAN,
Lieutenant, Internal Affairs Bureau Group 22; RIVERA, Sergeant,
Internal Affairs Bureau Group 22; EDWARD F. MULLANE,
Deputy Inspector, Commanding Officer of Bronx Narcotics; FLORENCE
L. FINKLE, Executive Director, Civilian Complaint Review Board;
VANESSA J. ROSEN, Investigator, Civilian Complaint Review Board;
each defendant being sued in their individual and official capacity.

                                      Defendants.

------------------------------------------------------------------------------X

**COMPLAINT AND
JURY TRIAL DEMAND**

**JUDGE BAER**

RECEIVED
SEP 1 9 2005
U.S.D.C. S.D.N.Y.
CASHIERS

       The plaintiff, RICHARD J. CARAMELLO, by his attorneys, Jeffrey L. Goldberg, P.C., as

and for his complaint against defendants, _____; and respectfully set forth and

allege that:

## INTRODUCTION

      1.     This is an action for equitable relief and money damages on behalf of RICHARD J.

CARAMELLO, (hereinafter referred to as the "plaintiff") who was, and who is prospectively

deprived of his Constitutional and Statutory rights as a result of the defendants' policies and practices of retaliating against employees who provide favorable and damaging testimony against defendants in Title VII litigation. Said policy was implemented under color of law.

## JURISDICTION AND VENUE

2.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343 and 2202 to secure protection of and to redress deprivation of rights secured by:

(a) Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a), making it unlawful to retaliate against an employee, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter;

(b) the Civil Rights of 1866, 42 U.S.C. § 1981, and the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 and 1985 (3), providing for the protection of all persons in their civil rights and the redress of deprivation of rights under color of law;

3.      The unlawful employment practices, violations of plaintiffs' civil rights and tortuous acts complained of herein were committed within the Eastern District of New York.

4.      The pendent jurisdiction of the federal district court is invoked with respect to the plaintiff's claims under New York State Executive Law § 296; New York City Administrative Code § 8-502; and the common law of the State of New York providing for damages to persons subjected to the intentional infliction of emotional distress or to intentional interference with employment contracts, pursuant to 28 U.S.C. 1367, because the entire action before the court comprises one constitutional and civil rights case, and the claims arise out of the same common nucleus of facts and are such that the plaintiff would ordinarily be expected to try them in one judicial proceeding.

## PLAINTIFF

5.     Plaintiff is a male citizen of the United States of America and is over twenty-one (21) years of age, a resident of the county of Hudson and the State of New Jersey and is a former employee of defendant THE CITY OF NEW YORK (hereinafter referred to as the "CITY").  More specifically defendant POLICE DEPARTMENT CITY OF NEW YORK (hereinafter referred to as the "NYPD").

## DEFENDANTS

6.     Defendant CITY was and is a municipal corporation organized and existing under and by virtue of the law of the State of New York, and at all relevant times was plaintiff's employer, with its central offices in the county of New York, and diverse other offices and facilities throughout the State of New York including the 43rd Precinct, in the Bronx County, State of New York, at which police facility the plaintiff was last assigned.

7.     Defendant CITY is an employer within the definitions contained in 42 U.S.C. § 2000e (a) and (b), as amended in 1972, employing more than fifteen (15) employees, and is engaged in an industry affecting commerce.

8.     RAYMOND W. KELLY, as Police Commissioner; _____

## PROCEDURAL REQUIREMENTS

9.     On or about December 14, 2004, plaintiff filed a timely Charge of Discrimination with the United States Equal Employment Opportunity Commission (hereinafter referred to as the "EEOC") Charge No.: 160-2005-00467, alleging retaliation by agents of defendant NYPD.

10.    On or about June 22, 2005, plaintiff received his "Notice of Right to Sue" letter from the EEOC.

12.    Plaintiff complied herewith by filing suit with this Court within the limitations

period.

13.     Plaintiff is not required to exhaust any administrative procedures prior to suit under the Civil Rights Act of 1866, or the Civil Rights Act of 1871.

## BACKGROUND

On or about July 2002, plaintiff was employed as a police officer with defendant NYPD and was subjected to unlawful harassment and retaliation by defendant NYPD.

On or about January 21, 2003, plaintiff was transferred to the 43rd Precinct and assigned to Operation Impact. Plaintiff was partnered with Police Officer Manuel Gomez. Police Officer Gomez has filed a discrimination lawsuit against defendant CITY.

Plaintiff soon learned that Police Officer Gomez was targeted by his supervisors for his involvement with the Latino Officers Association (hereinafter referred to as the LOA) which alleged discrimination against minority officers in the terms and conditions of their employment with defendant CITY, commonly known as the LOA Settlement. Latino Officers Association et al. v. City of New York et al. 99 civ 9568, (LAK)(KNF) SDNY.

On several occasions, plaintiff witnessed a negative attitude and overt acts of retaliation against Police Officer Gomez. As a result of plaintiff's close affiliation with Police Officer Gomez and refusal to abandon their friendship, plaintiff was subjected to illegal and unwarranted adverse employment actions.

In or around February 2003, Police Officer Ciamora Dominguez, 43rd Precinct, was notified by Sergeant Kiyar and Beckel that she does not have the required college credits and must start college credits in order to maintain her position as a police officer. Upon information and belief, agents of defendant NYPD illegally hired and retained Police Officer Dominguez when she could not have been legally qualified under the hiring requirements. Plaintiff alleges that Police

Dominguez may have had an improper sexual relationship with someone in Applicant Processing.

Plaintiff alleges that Police Dominguez had unlimited access to Department records, police coverage, strategies, files, computers and officers personnel records within the 43rd Precinct.

Plaintiff alleges that Police Officer Dominguez use the aforementioned access to pass information to several organized drug gangs in the Bronx.

Plaintiff alleges that Police Officer Dominguez made illegally and without police necessity copies of officers personnel files.

Plaintiff alleges that Police Officer Dominguez illegally and without police necessity used other officer's computer access codes to run plates, VIN information, names, addresses and other sensitive police information for known narcotic gangs in the 43rd Precinct.

Plaintiff alleges that Police Officer Dominguez had sexual relations with Caesar Mendez (later arrested on September 20, 2003, for assaulting plaintiff and Police Officer Gomez), Alvin "Angel" Monsontos (aka M&M, owner of the Peoples Choice Taxi, which was used to distribute narcotics), Andy Moscat (the leader of the Boyton Elder Crew), Daniel "Dap" Cortes (the leader of the Manor and Watson Gang), Victor Alejandro, Carlos "Carlo" Diaz and several others. Plaintiff would keep in constant contact with the aforementioned individuals with her cellular telephone and privately meeting them on and off duty to pass them sensitive police information. On several occasions, whenever warrants were executed in and around the Watson Sports Bar no drugs were ever recovered.

Plaintiff alleges that Police Officers Dominguez and Lorie Irrizarry were observed hanging out at the Copacabana with same aforementioned individuals.

Plaintiff alleges that Police Officer Dominguez was involved in selling firearms and Kevlar vests to local drug dealers including Andy Moscat.

Plaintiff alleges that Police Officer Dominguez used a domestic incident as a ruse to bring home a Department radio solely to monitor police activities for the drug gangs.

Plaintiff alleges that when IAB Group 22 interviewed Andy Moscat, he stated "That bitch sucks great dick and I fucked her good."

Plaintiff alleges that Police Officer Dominguez was having an illicit sexual relationship with Sergeant Jay Santana, 43rd Precinct, on and off duty, inside Department vehicles and public buildings.

Plaintiff alleges that the aforementioned allegations _____ was reported to IAB Group 22 by plaintiff, Sergeants Neiss and Kiyar, Police Officers John Laporte and Gomez. Upon information and belief, IAB did nothing about Police Officer Dominguez's criminal activities.

In or about July 2003, Police Officer Dominguez was quietly fired.

Plaintiff alleges that once he exposed the criminal activities and serious misconduct in the 43rd Precinct, he was only targeted much harder including Police Officer Laporte.

On or about September 20, 2003, plaintiff was assigned to work a foot post along the 1200 block of Wheeler Avenue and Westchester Avenue, an economically deprived area with a fair amount of street gang and drug activity. Plaintiff's partner was Police Officer Gomez. While responding to a noise complaint, they were ambushed and assaulted by local drug dealers and their crew. During this altercation, the perpetrators tried to take their firearms. Eventually, several perpetrators in the group were arrested but, instead of supporting them, agents of defendant NYPD saw this as an opportunity to get Police Officer Gomez.

In or about September 2003, plaintiff was questioned by defendant MARLENE BEAMAN, then acting as the Integrity Control Officer of the 43rd Precinct. Defendant MARLENE BEAMAN would ask plaintiff lots of probative questions about Police Officer Gomez's on duty and

off duty activities relating to the LOA Settlement or any complaints plaintiff may have had against Police Officer Gomez.

On or about February 24, 2004, plaintiff filed for unemployment with the Department of Labor (hereinafter referred to as the DOL).

On or about July 19, 2004, plaintiff was placed on Modified Assignment by investigators assigned to the Chief of Department's Office and transferred to the Bronx Court Section as a result of plaintiff owning and renovating an investment property in Hoboken, New Jersey. The property was bequeathed to plaintiff in 1995 after the death of his parents. Plaintiff's ownership interest was brought to the attention of defendant NYPD by Megan Burke, a woman plaintiff dated several times between September 2002 and May 2003.

On or about July 20, 2004, plaintiff met with defendant KEVIN KEENEY at the Employee Management Division. Upon plaintiff introducing himself, defendant asked him to have a seat. Defendant then asked plaintiff, "Do you know what this is about?" Defendant told plaintiff that he has a lot of problems ahead of him. That they, defendant NYPD was coming after the plaintiff. Defendant then sat back in his chair and smiled saying, "I have had guys bigger than you calling me. I had them crying like a little baby begging for their jobs back. I don't care I sleep well at night doing this, firing people. I do what I do and I answer to no one. I am one Sergeant with a lot of juice. I say who goes and who stays. I have had guys crying like little bitches here and I don't care. They were begging me for their jobs back and I told them to take it like man not a little bitch. I had one guy that failed to get in touch with me in a timely manner. Do you know what I did? I sent Inspections down after him in the Police Academy and they pulled him out of class physically and brought him to me. I buried that kid. You can get a lawyer, sue, do your 49, and you're still getting fired. This 49 is only a formality and technicality being that someone got fired

and sued saying he never got his chance to tell his story. When you are done you are going to see Early intervention. That is only to protect the Department being that three officers over the weekend a year ago that were placed on Modified Assignment killed themselves. It is to protect the Department, only a formality." Plaintiff was then told the PBA would not back him and to get out.

Plaintiff alleges that agents of defendant NYPD told him that it was illegal and against Department Guidelines to own his family home. Plaintiff's ownership constituted Residency Fraud.

On or about August 1, 2004, plaintiff's brother in law called defendant DARRYL WEIR and wanted to know why defendant NYPD was "gunning" for plaintiff and why they were not investigating plaintiff's ex-girlfriend Ms. Megan Burke for harassment, stalking and filing a false complaint against plaintiff. Defendant DARRYL WEIR alleged said "It was coming from above and that they knew the complaint was bullshit." He further stated "Ms. Burke was a nut and there is nothing like a woman scorned." Plaintiff alleges that defendant DARRYL WEIR acknowledges that plaintiff had an excellent and that it was out of his hands. Defendant DARRYL WEIR then closed out his case and recommended plaintiff's termination.

In or around August 2004, plaintiff was ordered to attend a GO-15 interview at the Chief of Department's Office, One Police Plaza by defendant DARRYL WEIR. The interview was conducted by defendant DARRYL WEIR and Sergeant Nelson. Defendant DARRYL WEIR claims to have engaged in surveillance of 207 8th Street, Hoboken, New Jersey; and 501 West 189th Street, New York, N.Y. Defendant DARRYL WEIR claims to have observed me entering my apartment building in New York and about thirty minutes later observed someone else enter plaintiff's property in New Jersey. Defendant DARRYL WEIR wanted to know who had access to the property in New Jersey. Plaintiff responded, family, contractors etc. Plaintiff asked if the

individual was a male or a female and the defendant did not know.  Upon information and belief, based on the time and date, it was more than likely the plaintiff that the defendant observed on his regular day off.

In or around December 2004, plaintiff was issued a Command Discipline for improper activity log entries by agents of IAB.

In or around 2004, plaintiff was waiting at a Bus Stop in Hoboken, New Jersey to catch a bus to New York.. Out of nowhere a male walked up to plaintiff and snapped his picture. This unidentified male then jumped into a police type vehicle with New York Plates and drove away.

In or around Early 2005, plaintiff was ordered to appear for a Random Dole Test shortly after defendant NYPD requested an additional thirty day extension to reply to plaintiff's Charge of Discrimination to the EEOC.

On or about February 22, 2005, defendant NYPD, through its agents Director Arnold S. Wechsler, Employee Management Division, Captain Stephen Komar and Lieutenant Hans Brehm served plaintiff with notice that he was terminated effective 1600 hours, February 22, 2005, by defendant RAYMOND W. KELLY, pursuant to the New York City Department of Personnel Rules and Regulations 5.2.7.

On or about February 23, 2005, the Department of Labor (hereinafter referred to as the DOL) disqualified the plaintiff from receiving unemployment benefits on the basis that plaintiff lost employment through misconduct.

On or about April 27, 2005, plaintiff sent a letter to the Department of Investigation (hereinafter referred to as DOI) to report allegations of serious misconduct against defendant VANESSA J. ROSEN regarding CCRB Case Nos.: 200303478 and 200309479.

On or about May 3, 2005, the DOL sent plaintiff a letter of determination that he was discharged for misconduct in connection with his employment with defendant NYPD as a result of an investigation performed by Patrol Services Bureau Investigation Unit, because he failed to reside in the City of New York as required by defendant NYPD.  Plaintiff sent a letter to Ms. Anna Pujos of the New York State Department of Labor alleging that he was the subject of retaliation, harassment and discrimination the true motivation of the defendants actions.

On or about May 5, 2005, plaintiff sent a letter to Ms. Anna Pujos of the New York State Department of Labor requesting a hearing in front of an Administrative Law Judge to rebut charges alleged by defendant NYPD the plaintiff was terminated for Residency Fraud, numerous CCRB complaints and other misconduct.  Plaintiff alleged that agents of defendant NYPD lied to the DOL in that, said agents claimed to have followed plaintiff twenty-four hours a day for a year, when in fact, in defendant NYPD's response to plaintiff's EEOC Charge, said agents only allegedly observed plaintiff thirteen times in a seven month period in the state of New Jersey.  Plaintiff alleged that he was the subject of retaliation, harassment and discrimination which is the true motivation of defendants actions.

On or about May 17, 2005, the DOL sent plaintiff a letter acknowledging his request for a hearing to appeal the DOL's initial determination which was to deny plaintiff his unemployment benefits.

On or about May 20, 2005, the DOL sent plaintiff a letter to appear on May 31, 2005, before an ALJ, Case No.: 005-11854, to determine plaintiff's loss of employment through misconduct and non-recoverable overpayment of benefits.

On or about May 31, 2005, plaintiff sent a letter to the DOL requesting an immediate hearing regarding Case No.: 005-11854.  Plaintiff alleged the defendant NYPD

terminated him for impermissible reasons: misconduct and issues relating to plaintiff's residency and retaliation, harassment and discrimination by filing with and/or witnessing and cooperating with the EEOC in Title VII litigation involving discrimination against a Latino male police officer employed with defendant NYPD.

On or about June 1, 2005, plaintiff called the Department of Investigation regarding the complaint he made against defendant VANESSA J. ROSEN. Plaintiff left messages with Ms. Sheryl Wright and Margery Lander.

On or about June 2, 2005, plaintiff received a call from Ms. Margery Lander that the aforementioned complaint would be handled by Deputy Commissioner Dan Burnell.

On or about June 12, 2005, plaintiff sent another official Freedom of Information Law (FOIL) request to Mr. Graham Daw, Agency Counsel for the CCRB, regarding the release of CCRB Case Nos.: 200303478 and 200309479. Plaintiff carbon copied: Director Shari Hyman, CCRB and the Department of Investigation.

On or about June 3, 2005, plaintiff and defendant CITY appeared before the DOL to hear plaintiff's application to re-open ALJ Case No. 005-11854.

On or about June 16, 2005, Mr. Graham Daw, Agency Counsel for the CCRB, responded to the plaintiff's FOIL request by granting part of his request and denying it in part. Mr. Shaw cited the release of witness names and pedigree would constitute an unwarranted invasion of privacy and much of the investigative analysis constitutes inter- and intra-agency material are exempt from disclosure under FOIL. Plaintiff received a smaller redacted copy of the investigative file.

On or about June 28, 2005, the DOL sent plaintiff a Decision and Notice of Decision, where the ALJ found that plaintiff throughout his employment with defendant NYPD he

always resided in the City of New York, there was no misconduct on plaintiff's part and his

employment ended under non-disqualifying conditions.

On or about July 18, 2005, defendant CITY through its Department of Citywide

Administrative Services (hereinafter referred to as DCAS) sent a letter to the DOL requesting an

appeal to re-open Case No.: 005-13852.

On or about July 18, 2005, Mr. Graham Daw, Agency Counsel for the CCRB,

responded to the plaintiff's request to re-open CCRB Case No.: 200303478 and 200309479.  Mr.

Daw wrote: after careful consideration, the Board has decided that it will not re-open your case.

On or about July 21, 2005, plaintiff received a notice from the DOL, Case No.: 005-

17314, that defendant CITY is contesting his eligibility for benefits.

On or about July 25, plaintiff sent a letter to the DOL, Case Nos.: 005-13852 and

005-17314, requesting that the DOL deny defendant CITY's appeal.  Plaintiff alleges that defendant

CITY is appealing in bad faith and is also time-barred as the statute clearly says an appeal must be

filed within twenty days on the date printed on the face of the decision to the office where the claim

was originally filed and which issued the initial determination, the defendant's appeal was filed

twenty-one days after the date printed on the initial determination.

On or about August 29, 2005, plaintiff received a letter from the DOL to appear on

September 9, 2005, Case No.: 005-17314, before an ALJ to hear defendant CITY's application to

re-open plaintiff's case, loss of employment through misconduct and non-recoverable overpayment

of benefits.

From February 22, 2005, to this day, plaintiff continues to suffer from depression

and anxiety including difficulties with sleeping and adjusting to everyday life.

Plaintiff has difficulties carrying on conversations with family and friends without

referring back to how his life was ruined by defendant NYPD through its agents.

From November 2003, until the plaintiff was terminated, he was constantly followed on a daily basis, photographed and video taped with and without his knowledge by agents from the Chief of Department's Office, Bronx Inspections, Bronx IAB Group 22 and Patrol Services Bureau.

Plaintiff's real and personal property was trespassed upon. In that, agents from the Chief of Department's Office, Bronx Inspections, Bronx IAB Group 22 and Patrol Services Bureau rifled through plaintiff's mailbox and his mail in Hoboken, New Jersey; peered into the window of his inherited home to take pictures on the interior as well as the exterior.

Plaintiff was ordered by agents from the Chief of Department's Office to divulge names, phone numbers and addresses or any other contact information with any woman plaintiff may have had a personal or sexual relationship with over the past two years. Plaintiff was told that if he did not divulge said information that he would be suspended or fired.

Plaintiff was ordered to provide copies of his checkbook, bank statements, photographs of the interior of the home in Hoboken, New Jersey and copies of his telephone records to the Chief of the Department's Office. Plaintiff alleges that defendant NYPD through its agents, violated his right to privacy and violated his constitutional right from unwarranted governmental intrusion.

## VIOLATIONS AND CLAIMS ALLEGED

### COUNT I
### RETALIATION
### IN VIOLATION OF
### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, 42 U.S.C. § 2000e-3

50.     Plaintiff re-alleges paragraphs 1 through 49 and incorporates them by reference as paragraphs 1 through 49 of Count I of this Complaint.

51.     Plaintiff allege that defendant NYPD, through its agents SHELDON HOWARD;

JOHN HALL; LARRY EDWARDS; BRIAN KENNY; JAMES HOWARD; LLAURADO, engaged in various retaliatory actions against him as a result of him providing testimony against Lieutenant Robert Demar and as a result of him filing complaints of retaliation to EEO, IAB and the EEOC, in violation of 42 U.S.C. § 2000e-3(a).

52.     That as a result of the illegal acts of the defendant NYPD and its' agents, plaintiff suffered depression, anxiety and loss of job opportunities.

### COUNT II
### HOSTILE WORK ENVIRONMENT
### IN VIOLATION OF
### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

53.     Plaintiff re-alleges paragraphs 1 through 52 and incorporates them by reference as paragraphs 1 through 52 of Count II of this Complaint.

54.     Plaintiff alleges that defendant NYPD through its agents SHELDON HOWARD; JOHN HALL; LARRY EDWARDS; BRIAN KENNY; JAMES HOWARD; and LLAURADO, engaged in various severe and hostile actions against him as a result of him providing testimony against Lieutenant Robert Demar and as a result of him filing complaints of retaliation to EEO, IAB and the EEOC.

55.     That as a result of the severe and hostile acts of the defendant NYPD through its agents, plaintiff suffered depression and anxiety.

### COUNT III
### RETALIATION
### IN VIOLATION OF
### THE CIVIL RIGHTS ACT OF 1866, 42 U.S.C. § 1981

56.     Plaintiff re-alleges paragraphs 1 through 55 and incorporates them by reference as paragraphs 1 through 55 of Count III of this Complaint.

57.     That by the aforesaid discriminatory acts and omissions of defendants SHELDON

HOWARD; JOHN HALL; LARRY EDWARDS; BRIAN KENNY; JAMES HOWARD; and LLAURADO, acting individually and acting in their capacities as supervisory and/or administrative officials of defendant NYPD interfered with plaintiff's right to enforce contracts under the color of State Law.

58.    That the purpose of the defendants SHELDON HOWARD; JOHN HALL; LARRY EDWARDS; BRIAN KENNY; JAMES HOWARD; and LLAURADO, in so acting was to prevent plaintiff, through economic and psychological intimidation, from seeking the equal protection of the laws, and from enjoying the equal privileges and immunities of citizens under the Constitution and laws of the United States and the State of New York including but not limited to enjoy his right to freedom of speech, movement, association and assembly, to petition his government for redress of his grievances, to be secure in his person, to be free from unreasonable searches and seizures, to enjoy privacy, and deprivation of life, liberty, and property without due process of law; all in violation of the first, fourth, fifth, ninth, and fourteenth amendments to the United States Constitution.

59.    Pursuant to their conduct, the defendants acted to deprive the plaintiff of his civil rights, by repeated and insidious acts of harassment, intimidation, bad faith and threat, all in violation of 42 U.S.C. § 1981.

60.    As a result of the aforesaid acts, depriving plaintiff of his civil rights, plaintiff suffered mental anguish, emotional distress, loss of employment opportunities, and other monetary damages, in addition to deprivation of his civil rights.

**COUNT IV**
**HOSTILE WORK ENVIRONMENT**
**IN VIOLATION OF**
**THE CIVIL RIGHTS ACT OF 1866, 42 U.S.C. § 1981**

61.    Plaintiff re-alleges paragraphs 1 through 60 and incorporates them by reference as

paragraphs 1 through 60 of Count IV of this Complaint.

62.     Plaintiff alleges that defendants SHELDON HOWARD; JOHN HALL; LARRY EDWARDS; BRIAN KENNY; JAMES HOWARD; and LLAURADO, engaged in various severe and hostile actions acting individually and acting in their capacities as supervisory and/or administrative officials of defendant NYPD interfering with plaintiff's right to enforce contracts under the color of State Law.

63.     That the purpose of the defendants SHELDON HOWARD; JOHN HALL; LARRY EDWARDS; BRIAN KENNY; JAMES HOWARD; and LLAURADO, in so acting was to prevent plaintiff, through economic and psychological intimidation, from seeking the equal protection of the laws, and from enjoying the equal privileges and immunities of citizens under the Constitution and laws of the United States and the State of New York.

64.     Pursuant to their conduct, the defendants acted to deprive the plaintiff of his civil rights, by repeated and insidious acts of harassment, intimidation, bad faith and threat, all in violation of 42 U.S.C. § 1981.

65.     As a result of the aforesaid acts, depriving plaintiff of his civil rights, plaintiff suffered mental anguish, emotional distress, loss of employment opportunities, and other monetary damages, in addition to deprivation of his civil rights.

**COUNT V**
**CONSPRIRACY**
**IN VIOLATION OF**
**THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983**

66.     Plaintiff re-alleges paragraphs 1 through 65 and incorporates them by reference as paragraphs 1 through 65 of Count V of this Complaint.

67.     Defendants SHELDON HOWARD; JOHN HALL; LARRY EDWARDS; BRIAN KENNY; JAMES HOWARD; and LLAURADO, under color of law, conspired with one another

to deprive plaintiff of his constitutional rights, including the rights: to enjoy freedom of speech, movement, association and assembly, to petition his government for redress of his grievances, to be secure in his person, to be free from unreasonable searches and seizures, to enjoy privacy, to be free from slavery and deprivation of life, liberty, and property without due process of law.

68.     Defendants SHELDON HOWARD; JOHN HALL; LARRY EDWARDS; BRIAN KENNY; JAMES HOWARD; and LLAURADO, acting individually and in their official capacities as supervisory and/or administrative officers of defendant NYPD, under color of state law, and having fully advised in or about May 2003, to the present, that plaintiff was being deprived of his constitutional rights, either acted in a concerted, malicious intentional pattern to retaliate against plaintiff, or knowing such retaliation was taking place, knowingly omitted to act to protect plaintiff from continuing deprivations of his rights to enjoy freedom of speech, movement, association and assembly, to petition his government for redress of his grievances, to be secure in his person, to be free from unreasonable searches and seizures, to enjoy privacy, to be free from slavery and deprivation of life, liberty, and property without due process of law; all in violation of the Constitution and laws of the United States and of 42 U.S.C. § 1983.

69.     The defendants, SHELDON HOWARD; JOHN HALL; LARRY EDWARDS; BRIAN KENNY; JAMES HOWARD; and LLAURADO, in acting to deprive plaintiff of his rights, went far beyond actions reasonably necessary for the discharge of their duties and within the scope of their employment, and instead misused their official powers and acted from a willful and malicious intent to deprive plaintiff of his civil rights and cause him grievous thereby.

70.     Defendants RAYMOND W. KELLY; NELDRA M. ZEIGLER; RAFAEL PINEIRO and JOANNE JAFFE, in acting to deprive plaintiff's rights, acted intentionally, knowingly, willfully, and with gross disregard of plaintiff's rights, in ratifying and condoning the

oppressive acts of SHELDON HOWARD; JOHN HALL; LARRY EDWARDS; BRIAN KENNY; JAMES HOWARD; and LLAURADO, in depriving plaintiff's rights.

71.     Defendants acted in an outrageous and systematic pattern of harassment, oppression, intimidation, bad faith, employment discrimination, cover-up and retaliation directed at plaintiff and continuing from in or about May 2003, to the present time.

72.     As a result of the acts of the defendants under color of law, plaintiff suffered emotional distress, humiliation and embarrassment, loss of employment opportunities, employment income, employment benefits, pension rights, medical and legal expenses, and out of pocket expenses for telephone, postage, and other costs of pursuing the claims herein.

## COUNT VI
## CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS
## THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1985(3)

73.     Plaintiff re-alleges paragraphs 1 through 72 and incorporates them by reference as paragraphs 1 through 72 of Count VI of this Complaint.

74.     That by the aforesaid discriminatory acts and omissions of the defendants, acting individually and acting in their capacities as supervisory and/or administrative officials of defendant NYPD conspired, planned, agreed and intended to act in manner to thereby cause economic and psychological injury to plaintiff.

75.     That the purpose of the defendants in so acting was to prevent plaintiff from obtaining the benefits to which he is entitled under the law and from seeking the equal protection of the laws, and from enjoying the equal privileges and immunities of citizens under the Constitution and laws of the United States and the State of New York including but not limited to enjoy his right to freedom of speech, movement, association and assembly, to petition his government for redress of his grievances, to be secure in his person, to be free from unreasonable

searches and seizures, to enjoy privacy, to be free from slavery and deprivation of life, liberty, and property without due process of law.

76.   Pursuant to their conspiracy, defendants SHELDON HOWARD; JOHN HALL; LARRY EDWARDS; BRIAN KENNY; JAMES HOWARD; and LLAURADO, acted to deprive the plaintiff of his civil rights, by repeated and insidious acts of retaliation and bad faith, all in violation of 42 U.S.C. § 1985 (3).

77.   As a result of the aforesaid acts, depriving plaintiff of his civil rights, plaintiff suffered mental anguish, emotional distress, physical illness, monetary damages, in addition to deprivation of his civil rights.

**COUNT V**
**CONSPRIRACY (CCRB)**
**IN VIOLATION OF**
**THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983**

66.   Plaintiff re-alleges paragraphs 1 through 65 and incorporates them by reference as paragraphs 1 through 65 of Count V of this Complaint.

67.   Defendants SHELDON HOWARD; JOHN HALL; LARRY EDWARDS; BRIAN KENNY; JAMES HOWARD; and LLAURADO, under color of law, conspired with one another to deprive plaintiff of his constitutional rights, including the rights: to enjoy freedom of speech, movement, association and assembly, to petition his government for redress of his grievances, to be secure in his person, to be free from unreasonable searches and seizures, to enjoy privacy, to be free from slavery and deprivation of life, liberty, and property without due process of law.

68.   Defendants SHELDON HOWARD; JOHN HALL; LARRY EDWARDS; BRIAN KENNY; JAMES HOWARD; and LLAURADO, acting individually and in their official capacities as supervisory and/or administrative officers of defendant NYPD, under color of state law, and having fully advised in or about May 2003, to the present, that plaintiff was being

deprived of his constitutional rights, either acted in a concerted, malicious intentional pattern to retaliate against plaintiff, or knowing such retaliation was taking place, knowingly omitted to act to protect plaintiff from continuing deprivations of his rights to enjoy freedom of speech, movement, association and assembly, to petition his government for redress of his grievances, to be secure in his person, to be free from unreasonable searches and seizures, to enjoy privacy, to be free from slavery and deprivation of life, liberty, and property without due process of law; all in violation of the Constitution and laws of the United States and of 42 U.S.C. § 1983.

69.    The defendants, SHELDON HOWARD; JOHN HALL; LARRY EDWARDS; BRIAN KENNY; JAMES HOWARD; and LLAURADO, in acting to deprive plaintiff of his rights, went far beyond actions reasonably necessary for the discharge of their duties and within the scope of their employment, and instead misused their official powers and acted from a willful and malicious intent to deprive plaintiff of his civil rights and cause him grievous thereby.

70.    Defendants RAYMOND W. KELLY; NELDRA M. ZEIGLER; RAFAEL PINEIRO and JOANNE JAFFE, in acting to deprive plaintiff's rights, acted intentionally, knowingly, willfully, and with gross disregard of plaintiff's rights, in ratifying and condoning the oppressive acts of SHELDON HOWARD; JOHN HALL; LARRY EDWARDS; BRIAN KENNY; JAMES HOWARD; and LLAURADO, in depriving plaintiff's rights.

71.    Defendants acted in an outrageous and systematic pattern of harassment, oppression, intimidation, bad faith, employment discrimination, cover-up and retaliation directed at plaintiff and continuing from in or about May 2003, to the present time.

72.    As a result of the acts of the defendants under color of law, plaintiff suffered emotional distress, humiliation and embarrassment, loss of employment opportunities, employment income, employment benefits, pension rights, medical and legal expenses, and out

of pocket expenses for telephone, postage, and other costs of pursuing the claims herein.

## COUNT VI
## CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS (CCRB)
## THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1985(3)

73.     Plaintiff re-alleges paragraphs 1 through 72 and incorporates them by reference as paragraphs 1 through 72 of Count VI of this Complaint.

74.     That by the aforesaid discriminatory acts and omissions of the defendants, acting individually and acting in their capacities as supervisory and/or administrative officials of defendant NYPD conspired, planned, agreed and intended to act in manner to thereby cause economic and psychological injury to plaintiff.

75.     That the purpose of the defendants in so acting was to prevent plaintiff from obtaining the benefits to which he is entitled under the law and from seeking the equal protection of the laws, and from enjoying the equal privileges and immunities of citizens under the Constitution and laws of the United States and the State of New York including but not limited to enjoy his right to freedom of speech, movement, association and assembly, to petition his government for redress of his grievances, to be secure in his person, to be free from unreasonable searches and seizures, to enjoy privacy, to be free from slavery and deprivation of life, liberty, and property without due process of law.

76.     Pursuant to their conspiracy, defendants SHELDON HOWARD; JOHN HALL; LARRY EDWARDS; BRIAN KENNY; JAMES HOWARD; and LLAURADO, acted to deprive the plaintiff of his civil rights, by repeated and insidious acts of retaliation and bad faith, all in violation of 42 U.S.C. § 1985 (3).

77.     As a result of the aforesaid acts, depriving plaintiff of his civil rights, plaintiff suffered mental anguish, emotional distress, physical illness, monetary damages, in addition to

deprivation of his civil rights.

**COUNT VII**
**RETALIATION**
**IN VIOLATION OF**
**NEW YORK STATE EXECUTVE LAW § 296**

78.     Plaintiff re-alleges paragraphs 1 through 57 and incorporates them by reference as paragraphs 1 through 57 of Count VII of this Complaint.

79.     The New York State Executive Law § 296 et seq., (Human Rights Law"), makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of retaliation.  The Human Rights Law makes it unlawful to create an atmosphere where it is abusive and hostile, such that the conditions of employment are altered.  The same legal standards that apply to Title VII claims apply to claims brought under the Human Rights Law.

**COUNT VIII**
**HOSTILE WORK ENVIRONMENT**
**IN VIOLATION OF**
**NEW YORK STATE EXECUTVE LAW § 296**

80.     Plaintiff re-alleges paragraphs 1 through 79 and incorporates them by reference as paragraphs 1 through 79 of Count VIII of this Complaint.

81.     The New York State Executive Law § 296 et seq., makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of retaliation.  The Human Rights Law makes it unlawful to create a severe and hostile environment where retaliation is encouraged and/or tolerated.  The same legal standards that apply to Title VII claims apply to claims brought under the Human Rights Law.

**COUNT IX**
**RETALIATION**
**IN VIOLATION OF**
**NEW YORK CITY ADMINSTRATIVE CODE § 8-502**

82.     Plaintiff re-alleges paragraphs 1 through 81 and incorporates them by reference as paragraphs 1 through 81 of Count IX of this Complaint.

83.     The New York City Administrative Code § 8-502, makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of retaliation.  The law also makes it unlawful to create an atmosphere where it is abusive and hostile, such that the conditions of employment are altered.  The same legal standards that apply to Title VII claims apply to claims brought under New York City Administrative Code § 8-502.

**COUNT X**
**HOSTILE WORK ENVIRONMENT**
**IN VIOLATION OF**
**NEW YORK CITY ADMINISTRATIVE CODE § 8-502**

84.     Plaintiff re-alleges paragraphs 1 through 83 and incorporates them by reference as paragraphs 1 through 83 of Count X of this Complaint.

85.     New York City Administrative Code § 8-502, makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of retaliation.  The law also makes it unlawful to create a severe and hostile environment where retaliation is encouraged and/or tolerated.  The same legal standards that apply to Title VII claims apply to claims brought under New York Administrative Code § 8-502.

**COUNT XI**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AND**
**INTENTIONAL INTERFERENCE WITH EMPLOYMENT CONTRACT**
**UNDER NEW YORK STATE COMMON LAW**

86.     Plaintiff re-alleges paragraphs 1 through 85 and incorporates them by reference as paragraphs 1 through 85 of Count XI of this Compliant.

87.     Defendants SHELDON HOWARD; JOHN HALL; LARRY EDWARDS; BRIAN

KENNY; JAMES HOWARD; and LLAURADO, intentionally inflicted the aforesaid acts of retaliation on plaintiff, with malice, and without legal, economic, business or social justification or excuse, and did so for the sole purpose of causing him emotional distress and anguish.

88.     As a result of the aforesaid intentional acts of defendants SHELDON HOWARD; JOHN HALL; LARRY EDWARDS; BRIAN KENNY; JAMES HOWARD; and LLAURADO, the plaintiff has been irreparably damaged.

89.     That because of the willful and malicious acts of the defendants SHELDON HOWARD; JOHN HALL; LARRY EDWARDS; BRIAN KENNY; JAMES HOWARD; and LLAURADO, in gross disregard of the civil rights and well-being of the plaintiff, plaintiff is entitled to punitive and exemplary damages.

## JURY TRIAL

90.     Plaintiff demands a trial by jury of all issues in this action that are so triable.

## PRAYER FOR RELIEF

**Wherefore,** Plaintiff respectfully requests that this Court find in his favor and against the Defendants as follows:

a.     Declare that the acts and conduct of defendants THE CITY OF NEW YORK; POLICE DEPARTMENT CITY OF NEW YORK; RAYMOND W. KELLY; NELDRA M. ZEIGLER; RAFAEL PINEIRO; JOANNE JAFFE; SHELDON HOWARD; JOHN HALL; LARRY EDWARDS; BRIAN KENNY; JAMES HOWARD; LLAURADO, violated Title VII of the Civil Rights Acts of 1964; the Civil Rights Act of 1866, 42 U.S.C. § 1981; the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 and 1985 (3); New York Executive Law § 296; New York City Administrative Code § 8-502; and Intentional Infliction of Emotional Distress and Intentional Interference with Employment Contract Under New York State Common Law;

b.       Award plaintiff damages for the injuries he sustained as a consequence of

participating in the investigation and proceedings of the aforementioned allegations that violated

his civil rights;

c.       Award plaintiff damages for the full value of all compensation and benefits lost

past and future, as a result of the defendants' unlawful conduct;

d.       Award plaintiff compensatory damages consistent with the aforementioned

statues;

e.       Award plaintiff punitive damages consistent with the aforementioned statutes;

f.       Award plaintiff appropriate compensatory and punitive damages on his individual

torts;

g.       Award plaintiff prejudgment interest;

h.       Award plaintiff reasonable attorneys' fees consistent with the aforementioned

statues; and

i.       Award plaintiff such other relief as this Court deems proper.

Dated:       Lake Success, New York
             September 19, 2005


                              Respectfully submitted,

                              By: _____
                                   Eric Sanders (ES0224)

                              Jeffrey L. Goldberg, P.C.
                              Attorneys for Plaintiff
                              2001 Marcus Avenue, Suite S10
                              Lake Success, NY 11042
                              516-775-9400